**SO ORDERED.**

**SIGNED this 28th day of November, 2017.**



_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

```
In re:                        )
                              )
Charles Ross Young,           )    Case No. 16-10434
Shearon Blake Young,          )
                              )
          Debtors.            )
_____)
                              )
William P. Miller,            )
Bankruptcy Administrator, and )
James C. Lanik, Trustee,      )
                              )
          Plaintiffs,         )
                              )
v.                            )    Adversary No. 16-02027
                              )
Charles Ross Young, and       )
Shearon Blake Young,          )
                              )
          Defendants.         )
_____)
```

### MEMORANDUM OPINION DENYING DISCHARGE

This adversary proceeding came before the Court for trial on September 28, 2017. James C. Lanik appeared as chapter 7 trustee ("Trustee") and William P. Miller as the Bankruptcy Administrator ("BA") ("Plaintiffs"). Jennifer Adams Ledford appeared as counsel

for Charles Ross and Shearon Blake Young ("Defendants" or
"Debtors"), defendants in this adversary proceeding and the
debtors in the underlying chapter 7 bankruptcy case, Case No. 16-
10434 ("Main Case"). This Memorandum Opinion shall constitute the
Court's findings of fact and conclusions of law under Fed. R. Civ.
P. 52, made applicable to this adversary proceeding by Fed. R.
Bankr. P. 7052. For the reasons stated below, judgment will be
entered in favor of Plaintiffs and against Defendants, denying
Defendants' discharge as a result of the unauthorized transfer of
property of the estate with the intent to hinder, delay, or defraud
an officer of the estate charged with custody of the property under
title 11.

## I.   Jurisdiction and Authority

The Court has jurisdiction over the subject matter of this
proceeding pursuant to 28 U.S.C. §§ 157 and 1334 as a matter
arising under title 11. Under 11 U.S.C. § 157(a), the United
States District Court for the Middle District of North Carolina
has referred this case and this proceeding to this Court by its
Local Rule 83.11. This is a core proceeding pursuant to 28 U.S.C.
§ 157(b)(2)(F), in which this Court has statutory and
constitutional authority to enter final judgments. Additionally,
the parties have consented to this Court entering final judgments
on all matters. See Joint Scheduling Memorandum [Doc. 17], ¶ D.

2

## II. Background

Charles Ross Young ("Mr. Young") lost his job in 2014. As a result, Defendants filed a joint voluntary petition on May 2, 2016. In their schedules, Defendants each claimed a $30,000 exemption for their residence and a $5,000 exemption for their interior furnishings as well as jewelry and clothing. The tax value of their residence was $569,100, though Defendants listed the property for sale at $549,000 and never received an offer. Nationstar Mortgage ("Nationstar") held a reverse mortgage lien on the property, with a payoff value of $477,874.76, and initiated foreclosure proceedings prior to the Defendants filing. Defendants planned to surrender their residence in satisfaction of this debt.

On May 25, Nationstar moved for relief from the automatic stay due to Defendants' ongoing default on their reverse mortgage. [Main Case, Doc. 10, pp. 3-4] ("Nationstar Motion"). Nationstar claimed arrears of $29,981.96, comprised of unpaid taxes and insurance as well as inspections, appraisals, and attorney fees and costs.

Shortly thereafter, the Trustee filed an objection to the Nationstar Motion. The Trustee requested a hearing to determine the value of the real property in question, alleging sufficient equity to protect Nationstar's interest. The Court set a hearing on the Nationstar Motion and the Trustee's Objection for June 15,

3

2016, which was subsequently continued until July 26. The Trustee's objection was based on an investigation of Defendants' residence, which revealed that it was a five-bedroom, waterfront home on Lake Tillery, listed for sale at $549,000. Photographs of the interior and exterior of the property portrayed an attractive, clean, and maintained residence with a boat house and dock on the water. In the Trustee's experience, the location and appearance of the home indicated the potential for available non-exempt equity.

As a result of his preliminary investigation, and in advance of the meeting of creditors, the Trustee initiated negotiations with Defendants' counsel regarding the potential non-exempt equity in Defendants' home and furnishings. Later, at the 341 meeting, the attorney for Defendants stated on the record—and in the presence of Defendants—that Defendants agreed to a sale of some of the furnishings in their home for the benefit of the estate and their creditors. The Trustee then informed Defendants and Defendants' attorney that a licensed auctioneer would be in touch to visit their residence to assess the Defendants' personal property so that the Trustee could sell any excess property above their exemptions for the benefit of the bankruptcy estate.

As agreed, the auctioneer visited Defendants at their home in mid-June. The auctioneer found a three-story home with five bedrooms, four of which were fully-furnished, as well as five

4

bathrooms, an upstairs living area with a dining room set, a fully-furnished main floor, porches with furniture, and a boat with a boat house.  The auctioneer, relying on conversations with the Trustee and Defendants, understood that Defendants were moving to a smaller home and that surplus property would be available for sale by the estate.  During a walk-through of the residence with Defendants, Defendants identified specific personal property they intended to take to their new home.  Based upon these statements from Defendants and his understanding from the Trustee, the auctioneer expected to sell the remaining, unidentified property, including the main and middle floor living area furnishings, bedroom furnishings in the two bedrooms on the top floor, and several large appliances.  The auctioneer also expected to sell the boat and any personal property within the boat house.

After the visit with the auctioneer, the Trustee continued negotiations with Defendants, Defendants' counsel, and the BA in an effort to settle these exemption issues and issues pending in other related adversary proceedings.  These negotiations resulted in a Motion to Approve Settlement Agreement, which the Trustee filed on July 22 and amended on July 25.  [Main Case, Doc. 23, 27] (as amended at Doc. 27, the "Settlement Motion").  The Settlement Motion reflected a compromise whereby Defendants would retain only those furnishings necessary to furnish their new residence. Consistent with the Defendants' identification of the personal

property they intended to keep during the walk through with the auctioneer, the parties agreed that the Trustee would sell the Lake Tillery residence and all surplus personal property located at the Lake Tillery residence that was not needed to furnish the Defendants' new residence for the benefit of the bankruptcy estate. With respect to the personal property, the settlement agreement specifically provided:

> The Debtors will retain possession of certain items (as identified by the Debtors to Mr. Lilly) of the Home Furnishings in full satisfaction of their exemption in the Home Furnishings. The Trustee will then sell the remaining Home Furnishings at auction. The Proceeds of that auction will belong to the estate free and clear of the Debtors' exemptions.

Settlement Motion ¶ 7.(a). The Trustee served the Settlement Motion on each of the Defendants individually and their counsel. Id. at 5.[1]

As for the residence, the settlement contemplated that the Trustee would market and sell it, satisfy any outstanding liens including tax liens and the lien held by Nationstar, and thereafter, the Defendants and the bankruptcy estate would equally

---

[1] The Trustee served the original Settlement Motion on Defendants and their counsel on July 22, 2017, and the amended Motion on July 27, 2017. The certificate of service indicates that the Defendants were served at the Lake Tillery address. Mr. Young testified that Defendants moved out of the Lake Tillery residence in mid-July, 2017, but the Defendants did not file any notice of change of address with the Court. The Lake Tillery address remained the Defendants' address of record, the property had not been sold, and there was no evidence that the Defendants did not have access to the property.

share any remaining value until the Defendants received proceeds equal to their allowed residential exemptions.

Despite this agreement, when the auctioneer returned to the property in early August to prepare the remaining furnishings for sale, the house had been entirely cleared of all saleable personal property.[2]   Unbeknownst to the Trustee, the auctioneer, or the Defendants' attorney, Defendants had removed property previously unidentified to the auctioneer and hired another auction company to sell all the remaining saleable assets in the house.  Defendants testified that they sold these other items because they knew they would not be taking them to their new home; indeed, Defendants identified and sold these items prior to moving in order to pay for moving costs.  Defendants did not seek authority from the Court to sell the property.  Of the specific items sold on July 9, the auctioneer had expected to sell, among other items, a leather sofa, a chair with ottoman, a red chair, a Victrola, a stereo with electronic turn table, and other furnishings.

Unaware of the Defendants' disposition of the personal property and prior to the second visit to the home by the auctioneer, the Trustee continued preparing for the auction as agreed, and filed a motion for authority to conduct a public

---

[2] Defendants stated that they left a bar in the basement, but conceded that the bar was too big to move or sell.

7

auction of real and personal property as contemplated by the Settlement Motion ("Motion for Sale"). On August 18, the Court approved the Settlement Motion. On August 23, the Court conducted a hearing on the Motion for Sale. At the sale hearing, the Trustee informed the Court about the recently discovered unauthorized disposition of estate property by Defendants. The BA requested approval of the sale in case any saleable items were found, but further requested that the approval be without prejudice to the Trustee or the BA seeking further relief against the Defendants due to the unauthorized disposition of estate property. The Court approved the sale with this reservation of rights. <u>See</u> Order Authorizing Trustee to Sell Personal and Real Property [Docs. 49 and 50, p. 3]. The Trustee moved ahead with his attempts to sell the real property, but did not receive any meaningful offers for the property and ultimately abandoned the real property to the secured lender.

On October 31, 2016, the Trustee initiated this adversary proceeding, objecting to the Defendants' discharge under 11 U.S.C. § 727(a)(2). [Doc. 1] ("Trustee's Complaint"). The Trustee also moved to extend the discharge objection deadline, which the Court granted.[3] <u>See</u> [Main Case, Docs. 62, 69]. No discharge has been entered in the case.

---

[3] Defendants objected to the request to extend the time to object to the Defendants' discharge solely due to the Plaintiffs' alleged lack of diligence

8

### III. Discussion

In their complaint, Plaintiffs seek denial of Defendants' discharge under Section 727(a)(2) [Doc. 28, p. 3], and request that the Court enter a monetary judgment against the Defendants, requiring them to reimburse the estate for the value of the property transferred either under Section 542(a) or pursuant to a claim for common law conversion. [Doc. 28, pp. 6-7].

### A.   Defendants' Discharge

Plaintiffs make no small request; "[a] debtor's ability to obtain a discharge of her debts is one of the most important advantages offered by the Bankruptcy Code." In re Evans, 538 B.R. 268, 283 (Bankr. W.D. Va. 2015). However, title 11 specifically prohibits a court from granting a discharge where:

> The debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed-- (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2). Under the Federal Rules of Bankruptcy Procedure, an objecting party must carry the initial burden of proving a prima facie objection to a general discharge. Fed. R.

---

in bringing the adversary proceeding 6 weeks after learning about the unauthorized disposition of estate assets. The Court overruled the objection and granted the motion. See [Doc. 68].

9

Bankr. P. 4005; Farouki v. Emirates Bank Int'l, Ltd., 14 F.3d 244, 249 n.17 (4th Cir. 1994). "Although the burden may shift to the debtor to provide satisfactory, explanatory evidence once the [objector] has established a prima facie case, the ultimate burden rests with the [party objecting to the discharge]." Farouki, 14 F.3d at 249. Further, an objection to a discharge must be proven by a preponderance of the evidence. Id. Finally, a discharge denial under Section 727 is "construed liberally in favor of the debtor and strictly against those objecting to discharge." In re Adeeb, 787 F.2d 1339, 1342 (9th Cir. 1986); see also In re Chalasani, 92 F.3d 1300, 1310 (2d Cir. 1996); In re Bowen, 498 B.R. 584, 587-88 (Bankr. W.D. Va. 2013) ("The denial of a discharge is an extreme penalty, and, as such, section 727(a) is generally construed liberally in the debtor's favor.").

Courts within the Fourth Circuit require an objecting party to establish four elements for a prima facie case under Section 727(a)(2):

> (1) The transfer, removal, destruction, or concealment of property, (2) belonging to the debtor or estate,[4] (3) within a year of filing the petition or after the filing of the petition, depending on the subsection, and (4) with the intent to hinder, delay, or defraud.

See, e.g., In re Evans, 538 B.R. 268, 284 (Bankr. W.D. Va. 2015). In this case, Plaintiffs allege, and Defendants do not deny, that

---

[4] In this case, the property was sold post-petition. Therefore, section 727(a)(2) applies only to a transfer of property of the estate.

property was transferred after the bankruptcy petition was filed, thus establishing elements (1) and (3). Defendants sold personal property to Thompson Auctions. [Exhibit 12, Interrogatories Answer, p. 4]. This sale took place on July 9, 2016, several months after their petition was filed in May of the same year. [Exhibit 12, Interrogatories Answer, p. 4].

**1.    Defendants' Transfer of Property of the Estate**

Plaintiffs argue that Defendants sold property of the estate. [Trial Brief of Plaintiffs, AP Doc. 28, p. 4]. At trial and in their answers to Plaintiffs' interrogatories, Defendants argue that the personal property sold did not belong to the estate because no specific furnishings had been identified in the Settlement Motion. [Exhibit 12, Interrogatories Answer, p. 3]. Defendants' argument is disingenuous, lacks credibility, and is legally incorrect in any event.

**a.    Defendants' Exemptions Did Not Remove the Home Furnishings from Property of the Estate**

At the commencement of Defendants' case, their legal and equitable interests in property, including personal property at their residence, became part of the bankruptcy estate. 11 U.S.C. § 541. Generally, debtors may claim exemptions in real and personal property as provided in Section 522 and applicable North Carolina law. "Unless a party in interest objects, the property claimed as exempt . . . is exempt." 11 U.S.C. § 522; see also

11

Fed. R. Bankr. P. 4003 ("[A] party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later.").

Here, the Defendants listed various pieces of the personal property at their residence in their exemptions, and assigned dollar values to the exemptions in each of the pieces of property. Defendants asserted the exemption under N.C. Gen. Stat. § 1C-1601(a)(4), which permits each Debtor to exempt their

> aggregate interest, not to exceed five thousand dollars ($5,000) in value for the debtor plus one thousand dollars ($1,000) for each dependent of the debtor, not to exceed four thousand dollars ($4,000) total for dependents, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

This section permits debtors to exempt value in property, rather than the specific property. See In re Gregory, 487 B.R. 444, 449-52 (Bankr. E.D.N.C. 2013).[5] Therefore, when a debtor claims an

---

[5] In Gregory, the court recognized that North Carolina has two categories of exemptions.

> The first category of exemptions allows debtors to exempt items in full, regardless of value. These exemptions, located in subsections (6), (7), (8), (9), (11) and (12) of N.C. Gen. Stat. § 1C-1601 and N.C. Gen. Stat. § 1-362, preserve a debtor's interest in the item or property itself, irrespective of the value assigned by the debtor. . . . The second category, by contrast, allows debtors to exempt an interest in value up to a specified monetary amount in the particular item, asset or property described. Subsections (1), (2), (3), (4), (5) and (10) of N.C. Gen. Stat. § 1C-1601(a) provide

exemption in household goods, "the trustee is not required to object to preserve the estate's right to retain any value beyond the value of the exempt interest claimed by the debtor." Id. (citing Schwab v. Reilly, 560 U.S. 770, 794-95, 130 S. Ct. 2652, 2669 (2010)).[6]  As such, the personal property remained property of the estate, subject to the Defendants' claim to a portion of its value as set forth in their exemptions.

### b.  The Settlement Agreement Did Not Remove Defendants' Furnishings from Property of the Estate.

Although the settlement resolved any valuation issues by providing for a sale of a portion of the property for the benefit of the estate, it did not have the effect of removing all of the Defendants' furnishings at the Lake Tillery house from property of the estate.  In the meantime, the Trustee proposed (and the Court approved) a settlement to resolve any valuation issues.  The resulting Settlement Motion permitted Defendants to move only that personal property identified to the auctioneer during his visit,

---

debtors with a limited interest exemption, which allows them to exempt their monetary interest therein as opposed to the property itself.

Id. at 450-51.

[6] Here, the deadline for the Trustee to object to the Debtors' exemptions had not passed as of the date of the approval of the Settlement Motion in any event. The creditors' meeting was adjourned numerous times and did not conclude until November 21, 2016, which had the effect of establishing the Trustee's deadline to object to exemptions under Fed. R. Bankr. P. 4003(b)(1) as December 20, 2016.

with the remaining property to be sold by the estate free and clear of the Defendants' claim for exemptions.

Mr. Young's testimony in this case lacked credibility.  When confronted with inconsistencies between his testimony and bankruptcy schedules, he testified that he had not reviewed his bankruptcy schedules prior to filing them with the Court.  He also testified that he was unaware of the terms of the settlement reached with the estate, despite conceding that he met with the auctioneer and identified to the auctioneer furniture that he intended to keep.  The auctioneer credibly testified that the Defendants became agitated during the tour of the premises.  The Trustee credibly testified that he called Defendants' counsel after the auctioneer's property tour, that counsel spoke with the Defendants, and thereafter reassured the Trustee that the Defendants were willing to abide by the terms of the settlement, despite their protests during the tour.  Mr. Young also testified that he did not receive copies of the Settlement Motion or speak with his attorney about the terms of the settlement,[7] and that he believed that he was permitted to keep or sell whatever personal property he chose in the house without limitation.  This testimony was not credible.  It is wholly unreasonable for anyone to believe

---

[7] Mr. Young's testimony that he did not speak with his attorney about the terms of the settlement was inconsistent with other portions of his testimony.  During his earlier testimony, he conceded that he understood the terms of the agreement, but that it was only an oral agreement and never put in writing.

as the Defendant professed that he could remove all saleable property from the house and leave nothing for the estate. Such an arrangement could hardly be called a settlement. Thus, Defendants sold property of the estate as contemplated by Section 727(a)(2).

### 2. Defendants' Intent

"In order for the court to deny discharge under section 727(a)(2), the objecting party must prove that the debtor had the actual intent to 'hinder, delay, or defraud;' constructive intent is not sufficient." In re Bowen, 498 B.R. 584, 588 (Bankr. W.D. Va. 2013) (citing In re Smoot, 265 B.R. 128, 142 (Bankr. E.D. Va. 1999), *subsequently aff'd sub nom.* Tavenner v. Smoot, 257 F.3d 401 (4th Cir. 2001); Zanderman, Inc. v. Sandoval (In re Sandoval), 153 F.3d 722, 1998 WL 497475, *2 (4th Cir. 1998) (unpublished)). Section 727(a)(2) is written in the disjunctive, requiring a specific intent by the debtor to hinder, delay, *or* defraud. In re McGalliard, 183 B.R. 726, 732 (Bankr. M.D.N.C. 1995) (emphasis added). Therefore, intent to defraud is not necessary under § 727(a)(2). Id. It is sufficient that the debtor had a specific intent to defraud, or to hinder or delay creditors. Id.

In McGalliard, this Court considered the showing necessary to establish an intent to hinder or delay creditors under § 727(a)(2).

> [A]s used in § 727(a)(2) 'hinder or delay' requires more than insignificant or trivial delay or impairment. A transfer which results in a reduction of assets available to a creditor so as to substantially and materially hinder or delay the creditor's ability to

15

obtain payment satisfies the requirements of §
727(a)(2).

Id. at 732.  The Court further explained:

> In the context of § 727(a)(2), proof of intent is
> difficult, as it is in other contexts, and usually
> requires a resort to circumstantial evidence. In re
> Afonica, 174 B.R. 242, 246 (Bankr. N.D. Oh. 1994) ("a
> finding of actual intent may be based upon
> circumstantial evidence or inferences drawn from a
> pattern of conduct"); and In re Erdman, 96 B.R. 978, 985
> (D.N.D. 1988) ("it is well settled that [specific]
> intent may be established by circumstantial evidence
> with inferences permitted to be made from Debtor's
> actions"). Rare is the case in which the debtor openly
> admits to an intent to defraud, delay or hinder his
> creditors. However, careful scrutiny of all of the
> circumstances surrounding a transfer of property or
> other action by a debtor may disclose that which he is
> unwilling to admit. The courts have developed certain
> "badges" which are regarded as highly indicative of a
> debtor's intent for purposes of § 727(a)(2). These
> factors include: (1) whether the transaction is
> conducted at arm's length; (2) whether the debtor is
> aware of the existence of a significant judgment or
> overdue debt; (3) whether the debtor is aware that a
> creditor is in hot pursuit of its judgment/claim; and
> (4) the timing of the transfer relative to the filing of
> the petition. See e.g., In re Wojtala, 113 B.R. 332,
> 336-37 (Bankr. E.D. Mich. 1990). There is no requirement
> under § 727(a)(2) that the debtor attempt to defraud,
> delay, or hinder all or even most of his creditors. All
> that is required is that the debtor act with the intent
> to hinder or delay a single creditor. Id. (citing In re
> Oberst, 91 B.R. 97, 101 (Bankr. C.D. Cal. 1988)).
> Furthermore, while just one of the "badges" of intent to
> impermissibly hinder or delay is sufficient for §
> 727(a)(2) purposes, "the accumulation of several factors
> indicates strongly that [a] debtor possessed the
> requisite intent." In re Lightfoot, 152 B.R. 141, 148
> (Bankr. S.D. Tex. 1993). See also In re Ingersoll, 124
> B.R. 116, 122 (M.D. Fla. 1991) (presence of one factor
> is sufficient).

Id. at 732-33.

Similarly, specific intent to defraud frequently must be shown by circumstantial evidence.  Because "direct evidence of fraudulent intent is rarely available, actual intent may be inferred through the presence of 'badges of fraud[,]'" such as:

> (1) A relationship between the debtor and the transferee; (2) Lack of consideration for the conveyance; (3) Debtor's insolvency or indebtedness; (4) Transfers of debtor's entire estate; (5) Reservation of benefits, control, or dominion by the debtor; (6) Secrecy or concealment of the transaction; and (7) Pendency or threat of litigation at the time of transfer.

In re Bowen, 498 B.R. 584, 588 (Bankr. W.D. Va. 2013) (quoting Smoot, 265 B.R. at 142).  A finding of intent to delay, hinder, or defraud does not require any one specific indicator and a single indicator alone may be sufficient.  Id.

In Smoot, the chapter 7 trustee satisfied a prima facie case of intent to defraud with a showing of several elements.  265 B.R. at 142.  There, the debtor transferred available cash to a related family entity controlled by him on the same day he received it "with full knowledge that he had already been found liable in another case and that the court had taken the amount of damages under advisement."  Id.  The court held that, where the debtor made transfers of substantially all of his available estate to a related entity for inadequate consideration while he was insolvent, and in doing so retained control over the related entity to which the transfer was made, the trustee had sufficiently demonstrated a prima facie case that the debtor intended the

17

transfer to hinder, delay, or defraud creditors as required by section 727(a)(2).  Id. at 142-43.

Hiding the details of a transaction also may indicate an intent to hinder, delay, or defraud creditors.  The debtor in In re Rahmi "intentionally hid the details regarding the receipt and disbursement of" post-petition settlement proceeds received in another litigation.  535 B.R. 655, 661 (Bankr. N.D.W. Va. 2015). The debtor also manipulated bank statements to hide these funds, which the trustee did not uncover until the trustee acquired a complete bank statement.  Id.  The court ultimately concluded:

> [T]he Debtor's conduct shows a pattern of concealment and nondisclosure sufficient to support the conclusion that, regarding his conduct in conjunction with the settlement and disposition of the proceeds of the Canadian Litigation, he acted with the intent to hinder, delay, and defraud his creditors and this court. Thus the UST has met her burden in showing entitlement to summary judgment under § 727(a)(2)(B).

Id. at 662.

Liquidating assets into cash also is indicative of the requisite intent to hinder or delay creditors.  As stated by this Court in McGalliard:

> The requisite intent to delay or hinder a creditor may be found where a debtor deals with his assets in a manner designed and intended to avoid seizure or attachment by one or more of his creditors. For example, where a debtor reduces an asset to cash so that he can carry the money on his person to keep it in his home in order to prevent the money from being attached or garnished, his actions fall within the purview of § 727(a)(2) and he will be denied a discharge.

183 B.R. at 734.

The evidence in this case reflects many of the badges of fraud recognized in Bowen, Smoot, and Rahmi, and further demonstrates an intent to hinder or delay creditors as contemplated by McGalliard. As a preliminary matter, and as noted above, the Defendants' testimony at trial was not credible; when it suited them, Defendants claimed a lack of commitment, knowledge, or understanding despite evidence to the contrary, and despite Mr. Young's concession that he understood the "oral agreement."

The evidence also demonstrated many of the specific factors and circumstances in McGalliard and Bowen. First, satisfying both the first and the fifth factors in Bowen and the first factor in McGalliard, there is a direct relationship between Defendants and the transferee in that the Defendants reserved the cash from the sale of the estate property for themselves. As in McGalliard, the Defendants in this case reduced estate assets to cash immediately prior to the Trustee taking possession of the assets under the terms of the settlement, and at a time when they knew the sale of the assets by the Trustee was imminent. The Defendants concede they retained the cash for personal benefit. The fact that Defendants contracted with the auction company to sell estate assets for their personal benefit immediately prior to an agreed auction of those assets by the Trustee, and then personally expended the proceeds themselves is strongly indicative of

19

fraudulent intent, but also demonstrates a specific intent to hinder or delay creditors.

Second, Defendants were insolvent at the time of the transfer. Their petition lists $554,385.50 in liabilities owed as of May, 2016. Their Lake Tillery home was abandoned by the Trustee because it could not be sold for an amount in excess of the liens despite pre-petition and post-petition marketing. Thus, Defendants were unable to pay their debts at the time of the surplus property sale. Third, Defendants transferred the entire saleable portion of their estate. Defendants conceded that every saleable asset at the house either was moved or sold, and that they left nothing for the estate as reasonably contemplated by the settlement.

Fourth, Defendants did not inform either their attorney or the Trustee of the sale, and left the depletion of the estate assets for the auctioneer to discover after the sale, their move, and their disposition of the proceeds of the auction. Their actions were wholly irreconcilable with the terms of the settlement. The Settlement Motion permitted the estate to sell all of the Defendants' furnishings with the exception of those items identified to the auctioneer. Although his testimony was inconsistent regarding the terms of the settlement, Mr. Young testified as to the Defendants' understanding of the Settlement Motion, and the motion clearly stated that they would retain only the items identified to the auctioneer. Despite the terms of the

motion, Defendants sold or otherwise disposed of all of the
saleable furnishings in their Lake Tillery home, without any
disclosure to parties in interest or authority from the Court.

Defendants attempt to explain their behavior as a
misunderstanding as to exactly which property had been identified
pursuant to the Settlement Motion. This excuse is logically
untenable for at least two reasons. First, Defendants sold surplus
property prior to their move after agreeing that surplus property
would be available for sale on behalf of the estate. Second,
Defendants removed or sold every saleable furnishing in their home.
Thus, there is no confusion as to which property was available;
before the hearing on the sale motion took place, all of the
personal property was gone.

Regardless of the illogic of the Defendants' arguments, this
professed lack of understanding is insufficient to rebut the
Trustee's <u>prima facie</u> case. The court in <u>Smoot</u> rejected similar
arguments, stating:

> According to debtor's testimony, he did not know the
> proceeds were exempt at the time of the transfer and did
> not discover that they were exempt until he was in the
> process of filling out his bankruptcy schedules. Debtor
> and Glass Apple have failed to consider the
> ramifications of the transfer under federal bankruptcy
> law, to explain why no consideration was received by
> debtor, or to explain why debtor did not retain an
> interest in the family corporation. Based on the weight
> of the evidence and the existence of several indicators
> of fraud, the court finds that debtor transferred the
> property with the intent to defraud his creditors and

21

that accordingly his discharge should be denied pursuant
to § 727(a)(2)(A).

Smoot, 265 B.R. at 143.

In summary, Defendants' arguments are insufficient to
outweigh evidence introduced by Plaintiffs or to rebut the
Trustee's prima facie case.  Defendants fail to explain why they
removed or sold all of their personal property after agreeing that
such property would be available for the estate, why they withheld
this information from their attorney and the Trustee, and why they
failed to disclose the absence of furnishings at their Lake Tillery
home despite contrary representations in the Settlement Motion.
As in Rahmi, Defendants' conduct "shows a pattern of concealment
and nondisclosure sufficient to support the conclusion that . . .
[Defendants] acted with the intent to hinder, delay, and defraud"
the Trustee.  535 B.R. at 662.  As a result, Defendants' discharge
will be denied under Section 727(a)(2).

**B.   Plaintiffs' Remedy**

Plaintiffs request damages caused by Defendants' sale of
estate property.  Specifically, Plaintiffs request turnover of the
personal property, or the value thereof, under 11 U.S.C. § 542(a)
or relief pursuant to conversion principles.  [Doc. 28, pp. 6-7].
Plaintiffs contend that the estate is entitled to a money judgment
for the proceeds of the estate property sold by Defendants under
Section 542(a).

22

Filing a bankruptcy petition establishes an estate comprised of a debtor's legal or equitable interests in property, including proceeds from the sale or transfer of the debtor's property.  11 U.S.C. § 541.  A debtor is required to deliver to the bankruptcy trustee, and account for, property that may be used, sold, or leased for the benefit of the estate. 11 U.S.C. § 542.  A trustee may move under Section 541 to compel a debtor to turnover property of the estate.  In re Gabriel, 390 B.R. 816, 821 (Bankr. D.S.C. 2008) (citing Fed. R. Bankr. P. 7001(1)).  Historically, a turnover motion required a trustee to prove that a debtor was either in possession of the property or identifiable proceeds of the property. Maggio v. Zeitz, 333 U.S. 56, 62 (1948).  However:

> More recently, . . . a majority of courts have held that present possession is no longer a complete defense to liability under section 542(a), which permits the trustee to recover from an entity that had possession of estate property at any time during the case and allows the trustee to recover the value of such property.

In re Price, No. 06-62721-MGD, 2006 WL 6589883, at *2 (Bankr. N.D. Ga. Sept. 20, 2006) (citing several cases) (internal quotations omitted).

Additionally, even under the then Bankruptcy Act, the Supreme Court recognized that the "dissipation of property of the estate could constitute contempt." In re Gentry, 275 B.R. 747, 750 (Bankr. W.D. Va. 2001) (citing Maggio, 333 U.S. at 64).  "The enactment of the Bankruptcy Code, and specifically § 542 thereof,

23

altered pre-Code practice to require that the trustee show only that the party subject to the turnover motion possessed the property of the estate during the bankruptcy case." Id. Today:

> If a debtor proves that [they are] not in possession of the property of the estate or its value at the time that the turnover action is heard, then entry of the turnover order is precluded. Instead, the trustee is more appropriately entitled to the recovery of a money judgment against the debtor for the value of the property of the estate.

Id. at 751 (internal citations omitted).

In this case, the Trustee is entitled to a money judgment for the proceeds Defendants received from the unauthorized sale of property of the estate under Section 542(a). Plaintiffs' evidence, however, was insufficient to establish the amount of any further damages.

## V.    Conclusion

For the reasons set forth above, the Court will enter orders contemporaneously with this memorandum opinion: (1) denying Defendants' discharge; and (2) awarding the Trustee monetary damages in the amount of $937.50 against the Defendants, jointly and severally.

[End of Document]

## <u>Parties to be Served</u>

**Charles Ross Young**
5047 Wooodrun on Tillery
Mount Gilead, NC 27306

**Shearon Blake Young**
5047 Woodrun on Tillery
Mount Gilead, NC 27306

**James C. Lanik**
P.O. Box 1550
High Point, NC 27261

**Andrew Dale Irby**
Roberson, Haworth & Reese, PLLC
300 N. Main St., Ste. 300
High Point, NC 27260

**Jennifer Adams Ledford**
Higgins Benjamin PLLC
301 N. Elm St.
Ste. 800
P.O. Box 20570
Greensboro, NC 27420

**William P. Miller**
Bankruptcy Administrator
101 S. Edgeworth St.
Greensboro, NC 27401